# United States Court of Appeals
# for the Fifth Circuit

_____

No. 24-50627

_____

United States Court of Appeals
Fifth Circuit

**FILED**

August 19, 2025

Lyle W. Cayce
Clerk

SPACE EXPLORATION TECHNOLOGIES CORPORATION,

*Plaintiff—Appellee*,

*versus*

NATIONAL LABOR RELATIONS BOARD; JENNIFER ABRUZZO, *in her official capacity as the General Counsel of the National Labor Relations Board*; MARVIN E. KAPLAN, *in his official capacity as the Chairman of the National Labor Relations Board*; MARVIN E. KAPLAN, *in his official capacity as Board Member of the National Labor Relations Board*; GWYNNE A. WILCOX, *in her official capacity as Board Member of the National Labor Relations Board*; DAVID M. PROUTY, *in his official capacity as Board Member of the National Labor Relations Board*; JOHN DOE, *Administrative Law Judge NLRB*,

*Defendants—Appellants*,

CONSOLIDATED WITH

_____

24-40533

_____

ENERGY TRANSFER, L.P.; LA GRANGE ACQUISITION, L.P.,

*Plaintiffs—Appellees*,

*versus*

NATIONAL LABOR RELATIONS BOARD; JENNIFER ABRUZZO, *in her official capacity as the General Counsel of the National Labor Relations Board*; MARVIN E. KAPLAN, *in his official capacity as the Chairman of the National Labor Relations Board*; MARVIN E. KAPLAN, *in their official capacities as Board Members of the National Labor Relations Board*; GWYNNE A. WILCOX, *in their official capacities as Board Members of the National Labor Relations Board*; DAVID M. PROUTY, *in their official capacities as Board Members of the National Labor Relations Board*; JOHN DOE, *in their official capacity as an Administrative Law Judge of the National Labor Relations Board*,

*Defendants—Appellants*,

CONSOLIDATED WITH

_____

24-10855

_____

AUNT BERTHA, *doing business as* FINDHELP,

*Plaintiff—Appellee*,

*versus*

NATIONAL LABOR RELATIONS BOARD, A FEDERAL ADMINISTRATIVE AGENCY; JENNIFER ABRUZZO, *in her official capacity as the General Counsel of the National Labor Relations Board*; MARVIN E. KAPLAN, *in his official capacity as the General Counsel of the National Labor Relations Board*; MARVIN E. KAPLAN; GWYNNE A. WILCOX; DAVID M. PROUTY, *in their official capacities as Board Members of the National Labor Relations Board*; JOHN DOE, *in their official capacity as an Administrative Law Judge of the National Labor Relations Board*,

*Defendants—Appellants.*

_____

2

Appeals from the United States District Courts
for the Western, Southern, and Northern Districts of Texas
USDC Nos. 6:24-CV-203, 3:24-CV-198,
4:24-CV-798

_____

Before WIENER, WILLETT, and DUNCAN, *Circuit Judges*.

DON R. WILLETT, *Circuit Judge*:

Congress created the National Labor Relations Board in 1935 to administer and enforce the National Labor Relations Act, the cornerstone of American labor law. Like many independent federal agencies, the NLRB relies heavily on "administrative adjudication." Its administrative law judges (ALJs) preside over claims of NLRA violations and issue initial decisions, which are subject to review by the agency's five-member Board—a quasi-judicial body of presidential appointees that sits atop the NLRB's hierarchy.

Board Members may be removed by the President only "for neglect of duty or malfeasance in office[.]"[1] And ALJs may be removed only "for good cause," as determined by the Merit Systems Protection Board (MSPB)—itself an independent, quasi-judicial agency that adjudicates "[f]ederal employee appeals from agency personnel actions."[2]

In this consolidated appeal, SpaceX, Energy Transfer, and Findhelp (together, the Employers) each faced unfair-labor-practice complaints. Before administrative proceedings began, each filed suit in a different federal district court, challenging the constitutionality of the NLRB's structure—specifically, the dual for-cause removal protections shielding both Board

_____

[1] 29 U.S.C. § 153(a).

[2] *Introduction to Federal Employee Appeals with MSPB*, U.S. MERIT SYSTEMS PROTECTION BOARD, https://perma.cc/PEJ7-KF8A. *See also* 5 U.S.C. § 7521(a).

Members and ALJs.[3] Each court granted a preliminary injunction, halting the agency's proceedings.

On appeal, the NLRB argues that the district courts (1) lacked jurisdiction to enjoin ongoing Board proceedings, and (2) abused their discretion in doing so, because the Employers are unlikely to prevail on the merits and have not shown irreparable harm.[4]

We disagree on both counts. First, nothing in federal law strips federal courts of jurisdiction to hear these claims—or to enjoin unconstitutional agency proceedings. Second, the district courts acted well within their discretion in granting preliminary relief.

ALJs are inferior officers insulated by two layers of for-cause removal protection—an arrangement the Supreme Court and this circuit have both held unconstitutional. As for the Board Members, precedent is less definitive. But the Supreme Court and this court have both cautioned against extending *Humphrey's Executor* to agencies that are not a "mirror image" of the Federal Trade Commission.

---

[3] The Employers sued "for declaratory and injunctive relief against [the NLRB] because [it is] presently pursuing an unconstitutional administrative proceeding against [them]."

[4] Since filing suit, the NLRB has withdrawn its position as to the constitutionality of the Board-Member-and-ALJ-removal provisions. On March 5, 2025, it informed the court in a letter that "[t]he NLRB is no longer relying on its previous argument that the multiple layers of removal restrictions for ALJs in 5 U.S.C. § 7521 comport with the separation of powers and Article II of the United States Constitution. In addition, the NLRB is no longer relying on its previous argument that the statutory tenure protections for Board members are constitutional." However, the NLRB reaffirmed its remaining arguments, including: (1) the Norris-LaGuardia Act divests the court of jurisdiction over labor disputes; (2) the Employers have not made the necessary showing of irreparable harm for a temporary injunction; and (3) severance is proper.

24-50627
c/w Nos. 24-10855, 24-40533

The Employers have made their case and should not have to choose between compliance and constitutionality. When an agency's structure violates the separation of powers, the harm is immediate—and the remedy must be, too.

We AFFIRM.

I

Before turning to the legal issues,[5] we briefly set out the NLRB's statutory framework. Federal law secures certain labor rights, and the NLRB

---

[5] We briefly address the jurisdictional issues of adversity and mootness. "The doctrine of mootness arises from Article III of the Constitution, which provides federal courts with jurisdiction over a matter only if there is a live 'case' or 'controversy.'" *Dierlam v. Trump*, 977 F.3d 471, 476 (5th Cir. 2020) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). When litigants "desire precisely the same result," no case or controversy exists. *Pool v. City of Houston*, 87 F.4th 733, 734 (5th Cir. 2023) (quoting *Moore v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 47, 48 (1971)). Here, even though the parties agree on the underlying constitutional issue, they do not seek "the same result": The Government wants the temporary injunctions vacated, while the Employers do not. And while the parties agree on *one* prong of the temporary injunction test—the likelihood of success on the merits—they disagree as to whether the Employers have made a showing of irreparable harm. Agreement on a single factor within a multi-factor test in insufficient to defeat adversity.

"A case becomes moot, [] 'only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161 (2016), *as revised* (Feb. 9, 2016) (quoting *Knox v. Service Emps.*, 567 U.S. 298, 307 (2012)). When analyzing mootness, courts should proceed "claim-by-claim." *United States v. Vega*, 960 F.3d 669, 673 (5th Cir. 2020). "Further, a case is not necessarily moot because it's uncertain whether the court's relief will have any practical impact on the plaintiff." *Dierlam*, 977 F.3d at 477.

Here, the parties agree as to the underlying constitutional issue, but they do not agree as to the propriety of the injunction; the NLRB continues to seek reversal of the lower courts' decisions. The NLRB has a concrete interest in vacating those injunctions so it can resume its investigations, while the Employers have an equally concrete interest in preserving them—and in sustaining the finding that they showed irreparable harm.

24-50627
c/w Nos. 24-10855, 24-40533

is tasked with investigating, adjudicating, and remedying "unfair labor practices" that infringe those rights.

The NLRB is divided into two distinct components: (1) an investigative and prosecutorial arm, led by a presidentially appointed General Counsel, and (2) an adjudicatory body—a five-member Board, also appointed by the President—that reviews ALJ decisions.

When an employee files a charge against an employer, a regional NLRB officer investigates. If the officer finds sufficient evidence, the General Counsel files a formal complaint. The complaint is then assigned to an ALJ, who builds the administrative record and conducts a hearing.[6] Once the ALJ issues a decision and recommended order, either party may seek review by filing "exceptions" with the Board. If no exceptions are filed, the ALJ's ruling automatically becomes the decision of the Board.[7] But if exceptions *are* filed, the Board may adopt the ALJ's recommendation or issue its own decision.

---

Furthermore, the change in Executive policy does not alter the reality that the Board-Member-and-ALJ protections are still on the books. Until Congress repeals them or an Article III court strikes them down, the President is still bound by those provisions. *See United States v. Klein*, 80 U.S. 128, 148 (1871). The contested NLRA provisions have not been repealed or sunset. *See Spell v. Edwards*, 962 F.3d 175, 179 (5th Cir. 2020). Accordingly, the disagreements articulated by the parties are sufficient to maintain a live case or controversy under Article III.

[6] *Administrative Law Judge Decisions*, NATIONAL LABOR RELATIONS BOARD, https://perma.cc/Q6BG-F2BR.

[7] *Id.*

24-50627
c/w Nos. 24-10855, 24-40533

A party dissatisfied with the Board's decision may seek review in the United States Court of Appeals for the circuit where the alleged unfair labor practice occurred.[8]

The removal protections for Board Members and ALJs differ in both form and degree. Board Members may be removed by the President only "for neglect of duty or malfeasance in office, but for no other cause."[9] ALJs, by contrast, may be removed only "for good cause established and determined by the Merit Systems Protection Board on the record after opportunity for hearing before the Board."[10]

The MSPB is an independent agency separate from the NLRB.[11] Thus, the President—acting through the Board—may remove an ALJ only if the MSPB first finds good cause. And MSPB Members themselves enjoy for-cause removal protection.[12]

---

[8] 29 U.S.C. § 160(e). The Board may also authorize the General Counsel to petition a U.S. district court to enforce the Board's order and to obtain "appropriate temporary relief or restraining order" to preserve the status quo during ongoing proceedings. *Id.*; *Investigate Charges*, NATIONAL LABOR RELATIONS BOARD, https://perma.cc/LHA4-9HA7.

[9] 29 U.S.C. § 153(a).

[10] 5 U.S.C. § 7521(a).

[11] The MSPB—created by the Civil Service Reform Act of 1978—is a quasi-judicial, independent agency that adjudicates "[f]ederal employee appeals from agency personnel actions." *Introduction to Federal Employee Appeals with MSPB*, U.S. MERIT SYSTEMS PROTECTION BOARD, https://perma.cc/PEJ7-KF8A. Its mission is to "ensure that Federal employees are protected against abuses by agency management, that Executive Branch agencies make employment decisions in accordance with the merit system principles, and that Federal merit systems are kept free of prohibited personnel practices." *Id.*

[12] 5 U.S.C. § 1202(d). Any MSPB member "may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office." *Id.*

The Employers challenge the constitutionality of these multi-layered removal provisions.

## A

SpaceX is a private aerospace company dedicated to its stated mission of "making life multiplanetary." To that end, it employs thousands of workers nationwide in rocket development and testing, rocket manufacturing, and spaceflight operations.

In December 2022, a former SpaceX employee filed an unfair-labor-practice charge with the NLRB. After investigating, the agency's regional office issued a complaint in March 2024 alleging that SpaceX's severance agreements violated the NLRA. An administrative hearing was set for October.

In April 2024, SpaceX filed suit in the Western District of Texas, asserting that the NLRB's ALJs and Board Members are unconstitutionally shielded from presidential removal. SpaceX moved for a preliminary injunction, which the district court granted.[13]

In granting relief, the court held that the removal provisions for both Board Members and ALJs were unconstitutional; that SpaceX had shown irreparable harm absent relief; and that blocking unlawful agency action would not cause any cognizable public harm. The NLRB timely appealed.

---

[13] *SpaceX v. NLRB*, 741 F. Supp. 3d 630, 634 (W.D. Tex. 2024).

24-50627
c/w Nos. 24-10855, 24-40533

B

Energy Transfer owns and operates "one of the largest and most diversified portfolios of energy assets in the United States." One of its subsidiaries is La Grange.

In November 2022, a La Grange employee filed an unfair-labor-practice charge with the NLRB. The employee was later terminated. In March 2024, the NLRB's regional office issued a complaint and notice of hearing against La Grange. An administrative hearing was set for July.

In June 2024, La Grange filed suit in the Southern District of Texas, alleging—among other claims—that the ALJs and Board Members are unconstitutionally shielded from removal. La Grange then sought a preliminary injunction, which the district court granted.[14]

In granting relief, the court concluded that the ALJs were unconstitutionally insulated from removal; that La Grange had shown it would suffer irreparable harm absent an injunction; and that the balance of equities favored granting relief. The court did not reach the question of the Board Members' removal protections. The NLRB timely appealed.

C

Aunt Bertha, doing business as Findhelp, is a public benefit corporation that operates "the largest network of free and reduced-cost social services in the United States."

In April 2024, the NLRB issued a consolidated complaint and notice of hearing, alleging that Findhelp had committed multiple unfair labor practices. An administrative hearing was set for September.

_____

[14] *Energy Transfer, LP v. NLRB*, 742 F. Supp. 3d 755, 762 (S.D. Tex. 2024).

24-50627
c/w Nos. 24-10855, 24-40533

In August 2024, Findhelp filed a similar suit in the Northern District of Texas, likewise alleging—among other claims—that the removal protections for ALJs and Board Members are unconstitutional. That same day, Findhelp sought a preliminary injunction, which the district court granted.[15]

In granting relief, the court found that the ALJs were unconstitutionally insulated from removal; that Findhelp had shown irreparable harm absent an injunction; and that the balance of harms and the public interest favored granting relief. The court did not reach the question of the Board Members' removal protections. The NLRB timely appealed.

## II

We begin, as we must, with the threshold question: jurisdiction.

The NLRB contends that the district courts lacked jurisdiction to enjoin Board proceedings, citing the Norris-LaGuardia Act—a statutory precursor to the NLRA. The Act states that "[n]o court of the United States . . . shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter."[16] According to the Board, this language strips district courts of authority to enjoin its proceedings. The Employers disagree.

To be sure, the Act withdraws jurisdiction from district courts in cases "involving or growing out of a labor dispute."[17] The NLRB argues that this

---

[15] *Aunt Bertha d/b/a Findhelp v. NLRB*, No. 24-cv-798, 2024 WL 4202383 (N.D. Tex. Sept. 16, 2024).

[16] 29 U.S.C. § 101.

[17] *Id.*

10

"capacious" phrase encompasses the Employers' suits, because each arose from an unfair-labor-practice complaint. But that reading stretches the statutory text too far.

The Act defines "labor dispute" as "any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment."[18] And a case is said to "involve or [ ] grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft, or occupation; or have direct or indirect interests therein; or who are employees of the same employer; or who are members of the same or an affiliated organization of employers or employees."[19]

These suits fall outside that definition. First, they are not between the Employers and their employees—they are between the Employers and the NLRB. Second, the Employers are not "engaged in the same industry, trade, craft, or occupation"—they are distinct companies in unrelated sectors suing a federal agency. Third, the removal protections for ALJs and Board Members do not concern "terms or conditions of employment, or [] the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange" such terms. These disputes do not implicate wages, hours, working conditions, or even union representation. They have nothing to do with employee boycotts, union organization, or labor strikes. Nor do the Employers seek to block the Board from adjudicating any particular unfair-labor-practice charge. Rather, the claims concern Article II and the separation of powers. The Employers challenge the structure of the

_____

[18] *Id.* § 113(c).

[19] *Id.* § 113(a).

Board itself—specifically, whether its Members and ALJs are too insulated from presidential removal. That kind of structural claim does not "grow out of" a labor dispute.

The Supreme Court has also recognized that the Act embodies "a basic policy against the injunction of *activities of labor unions*"[20] and was meant to "tak[e] the federal courts out of the labor injunction business except in [] very limited circumstances."[21] Congress passed the Act "in response to federal-court intervention on behalf of employers through the use of injunctive powers against unions and other associations of employees"—a practice that, by turning injunctive powers against unions, had "caused the federal judiciary to fall into disrepute among large segments of this Nation's population."[22] Congress was not aiming to bar constitutional challenges to agency structure; it was targeting judicial overreach against employees.

The text of the Act resolves the matter: both we and the district courts have jurisdiction to enjoin the NLRB.

Even if the Act's plain text were not dispositive, these suits would still fall within the district courts' jurisdiction. The Act is not a "special statutory review scheme," but it functions similarly in one respect: it "divests district courts of their ordinary jurisdiction over the covered [types of] cases."[23] Admittedly, the parties do not frame the Act as such—an omission that might

---

[20] *Int'l Ass'n of Machinists v. Street,* 367 U.S. 740, 772 (1961) (emphasis added).

[21] *Marine Cooks & Stewards v. Panama S.S. Co.*, 362 U.S. 365, 369 (1960); *see also United States v. Hutcheson*, 312 U.S. 219, 235–236 (1941).

[22] *Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n*, 457 U.S. 702, 715 (1982) (internal citations omitted).

[23] *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 185 (2023) (citing *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994)).

24-50627
c/w Nos. 24-10855, 24-40533

normally amount to forfeiture.[24] But jurisdictional arguments are an "obvious exception" to forfeiture; subject-matter jurisdiction "can never be forfeited."[25] With that in mind, we proceed.

In assessing whether a statutory review scheme strips district courts of jurisdiction, we consider the three *Thunder Basin* factors: (1) whether precluding district court jurisdiction would "foreclose all meaningful judicial review" of the claim; (2) whether the claim is "wholly collateral to [the] statute's review provisions"; and (3) whether the claim lies "outside the agency's expertise."[26]

All three *Thunder Basin* factors confirm that these structural challenges are not "of the type" targeted by the Norris-LaGuardia Act's jurisdictional bar.

First, judicial review would be meaningless if delayed until after agency proceedings conclude. Regardless of the NLRB's decision, the harm alleged in the Employers' removal claims would persist. As in *Axon Enterprise, Inc. v. Federal Trade Commission*, the Employers contend they are being "subject[ed] to an illegitimate proceeding, led by an illegitimate decisionmaker."[27] If the injury is the process itself, review after the fact comes too late: "A proceeding that has already happened cannot be undone," rendering later review "too late to be meaningful."[28] Without jurisdiction, the Employers must endure an unconstitutional proceeding—

_____

[24] *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021).

[25] *Id.* (quoting *United States v. Cotton*, 535 U.S. 625, 630 (2002)).

[26] *Thunder Basin*, 510 U.S. at 212–13 (internal quotations and citation omitted); *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 489 (2010).

[27] 598 U.S. at 191.

[28] *Id.*

Case: 24-50627    Document: 287-2    Page: 14    Date Filed: 10/10/2025
Case 4:24-cv-00798-P    Document 40    Filed 10/14/25    Page 14 of 42    PageID 517

24-50627
c/w Nos. 24-10855, 24-40533

an injury that "cannot be undone" ex post.[29] The first *Thunder Basin* factor favors the Employers.

Second, the claims are wholly collateral. The Employers are prospectively challenging the NLRB's authority to proceed at all—"rather than actions taken in the agency proceedings."[30] As in *Axon* and *Free Enterprise Fund v. Public Co. Accounting Oversight Board*, they do not contest the outcome of any particular proceeding; they contest the Board's very power to act. In other words, they are challenging the NLRB's power as such—not "anything particular about how that power was wielded."[31] The Employers' constitutional claims are wholly collateral to any decision the NLRB might issue.

Third, the NLRB lacks the expertise to decide whether tenure protections for its Members and ALJs' violate Article II. As *Free Enterprise Fund* explained, "Claims that tenure protections violate Article II . . . raise 'standard questions of administrative' and constitutional law, detached from 'considerations of agency policy.'"[32] The NLRB "knows a good deal about [labor] policy, but nothing special about the separation of powers."[33] Those constitutional questions lie outside the agency's core competence—and squarely within the judiciary's.

---

[29] *Id.*

[30] *Id.* at 192; *see also Free Enter. Fund*, 561 U.S. at 490.

[31] *Axon Enter.*, 598 U.S. at 193.

[32] *Id.* at 194 (quoting *Free Enter. Fund,* 561 U.S. at 491 (internal quotation marks and alterations omitted)).

[33] *Id.*

24-50627
c/w Nos. 24-10855, 24-40533

### III

Because the district courts had the authority to enjoin the NLRB, we turn to whether they properly exercised it.

"We review the district court's grant of [a] preliminary injunction for abuse of discretion, reviewing underlying factual findings for clear error and legal conclusions de novo."[34] "The test for whether to grant or deny a preliminary injunction is long-standing and familiar."[35] A plaintiff seeking such relief must show four things: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm without an injunction; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest.[36] "The first factor—likelihood of success on the merits—is 'the most important.'"[37]

### A

As an initial matter, we consider whether severability affects the availability of preliminary injunctive relief. The NLRB contends that injunctive relief is inappropriate where severance could cure the alleged constitutional defect—namely, the removal protections for ALJs and Board Members. The Employers counter that the possibility of severance has no bearing at the preliminary injunction stage. We agree with the Employers.

"Generally speaking, when confronting a constitutional flaw in a statute, we try to limit the solution to the problem, severing any problematic

---

[34] *Harrison v. Young*, 48 F.4th 331, 339 (5th Cir. 2022).

[35] *United States v. Abbott*, 110 F.4th 700, 706 (5th Cir. 2024).

[36] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

[37] *Abbott*, 110 F.4th at 706 (quoting *Mock v. Garland*, 75 F.4th 563, 587 n.60 (5th Cir. 2023)).

15

portions while leaving the remainder intact."[38] And "[w]hen Congress has expressly provided a severability clause, [the court's] task is simplified"—we "presume that Congress did not intend the validity of the statute in question to depend on the validity of the constitutionally offensive provision . . . unless there is strong evidence that Congress intended otherwise."[39] The NLRA contains such a clause.[40]

The NLRB points to two Supreme Court cases in which the Court severed unconstitutional removal provisions rather than striking down the entire statute.[41] In *Free Enterprise Fund*, the Court acknowledged the "elusive" nature of severability but ultimately severed the offending provisions from the Sarbanes-Oxley Act, preserving the remainder.[42] Likewise, in *Seila Law LLC v. Consumer Financial Protection Bureau*, the Court severed the unconstitutional provisions and upheld the rest of the statute.[43]

But those cases arose after final judgments and permanent relief—not at the preliminary injunction stage. As the district court in *SpaceX* observed,

–––––––––––––––––––––––––––––

[38] *Free Enter. Fund*, 561 U.S. at 508 (internal quotation marks and citation omitted); *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 234 (2020).

[39] *Seila Law*, 591 U.S. at 234 (internal quotation marks and citation omitted).

[40] 29 U.S.C. § 166 ("If any provision of this subchapter, or the application of such provision to any person or circumstances, shall be held invalid, the remainder of this subchapter, or the application of such provision to persons or circumstances other than those as to which it is held invalid, shall not be affected thereby.").

[41] The NLRB also relies heavily on *Barr v. American Association of Political Consultants, Inc.* to support its argument for severability. But *Barr* suffers the same flaw as *Free Enterprise* and *Seila Law*—in each, the Court first found the provision unconstitutional and only then turned to severability. 591 U.S. 610, 621–25 (2020).

[42] *Free Enter. Fund*, 561 U.S. at 508–09.

[43] 591 U.S. at 235.

24-50627
c/w Nos. 24-10855, 24-40533

"[a] statute must *be found* to be inoperative or unconstitutional as it was written before the issue of severance can be reached."[44]

Although the Employers sought declaratory judgments invalidating the removal provisions, those requests were not properly before the district courts—and they are not properly before us now.[45] If the Employers later prevail on the merits, we may then consider whether severance is appropriate. At this stage, however, the severability inquiry is premature and belongs to the merits phase, when the court considers final relief.

Accordingly, the possibility of severance does not preclude preliminary injunctive relief.

B

We now turn to the merits. Because the Employers seek a preliminary injunction, they "must establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest."[46] The final two injunction factors—balance of harms and the public interest—"merge when the Government is the opposing party."[47]

1

Article II vests "[t]he executive Power" in a single individual: "a President of the United States of America."[48] It vests that power in no other

_____

[44] *SpaceX*, 741 F. Supp. 3d at 638 (emphasis added).

[45] *See, e.g.*, *id.* at 636.

[46] *Winter*, 555 U.S. at 20.

[47] *Nken v. Holder*, 556 U.S. 418, 435 (2009).

[48] U.S. CONST. art. II.

17

24-50627
c/w Nos. 24-10855, 24-40533

person or branch. The Framers deliberately entrusted it to one President. As Hamilton warned, a plural executive would "tend[] to conceal faults and destroy responsibility," thus removing accountability to the electorate—the very people the Constitution, and through it, the Executive, exists to serve.[49]

Even so, the Framers were pragmatic. They recognized that the President could not fulfill his duties "alone and unaided"—he would need subordinates.[50] To that end, they viewed the removal power as the mechanism for preserving "the chain of dependence," whereby "the lowest officers, the middle grade, and the highest, will depend, as they ought, on the President, and the President on the community."[51] This concept was not novel: "[t]he removal right's inherency to the executive power stretches its roots back to England."[52]

Accordingly, because the executive power remains solely vested in the President, those who exercise it on his behalf must remain subject to his oversight.[53]

_____

[49] THE FEDERALIST NO. 70, at 427 (Alexander Hamilton) (Clinton Rossiter ed., 1961).

[50] *Myers v. United States*, 272 U.S. 52, 117 (1926) ("The vesting of the executive power in the President was essentially a grant of the power to execute the laws. But the President alone and unaided could not execute the laws. He must execute them by the assistance of subordinates. This view has since been repeatedly affirmed by this court." (collecting cases)).

[51] DOCUMENTARY HISTORY OF THE FIRST FEDERAL CONGRESS OF THE UNITED STATES OF AMERICA, March 4, 1789–March 3, 1791, at 925 (statement of James Madison) (Linda Grant De Pauw et al., eds. 1972).

[52] *VHS Acquisition Subsidiary No. 7 v. NLRB*, 759 F.Supp.3d 88, 92 (D.D.C. 2024) (recounting history).

[53] *See Free Enter. Fund*, 561 U.S. at 513–14.

"Yet not all removal restrictions are constitutionally problematic."[54] For example, "inferior officers" may receive certain for-cause protections.[55] Such protections are also permissible for some principal officers—but only in the narrow circumstance in which they "act as part of an expert board."[56]

The question here is whether NLRB ALJs and Board Members are principal or inferior officers—and then "whether the restrictions on their removal are sufficiently onerous, that the President has lost the ability to take care that the laws are faithfully executed."[57]

a

We begin with the constitutionality of the ALJ removal provisions. The NLRB contends that the ALJs' tenure protections are constitutional.[58] Our precedent says otherwise.

Just two years ago, we held nearly identical removal protections for SEC ALJs unconstitutional.[59] In *Jarkesy v. Securities & Exchange*

---

[54] *Jarkesy v. Sec. & Exch. Comm'n*, 34 F.4th 446, 463 (5th Cir. 2022), *aff'd and remanded*, 603 U.S. 109 (2024), *and adhered to*, No. 20-61007, 2024 WL 5496969 (5th Cir. Nov. 12, 2024).

[55] *See, e.g.*, *Morrison v. Olson*, 487 U.S. 654, 691–92 (1988).

[56] *Jarkesy*, 34 F.4th at 463.

[57] *Id.* at 463–64.

[58] Since filing suit, the NLRB has abandoned its position as to the constitutionality of the Board-Member-and-ALJ-removal provisions. The parties now agree that the likelihood of success on the merits favors the Employers. Even so, we walk through the constitutional analysis as if the NLRB had maintained its original opposition. For discussion of the effects, if any, of the NLRB's position change, *see supra* note 5.

[59] *Jarkesy*, 34 F.4th at 464. The Supreme Court reviewed our decision in *Jarkesy* and affirmed without "reach[ing] the nondelegation or removal issues." *Sec. & Exch. Comm'n v. Jarkesy*, 603 U.S. 109, 121 (2024). On remand, we determined our prior holdings had "not been disturbed" by the Supreme Court's opinion. *Jarkesy v. Sec. & Exch.*

24-50627
c/w Nos. 24-10855, 24-40533

*Commission*, we confronted a two-layer removal scheme for SEC ALJs: (1) ALJs could be removed by the Commission only for "good cause," as determined by the MSPB;[60] and (2) SEC Commissioners and MSPB Members themselves could be removed only "for cause."[61]

We thus concluded that "at least two layers of for-cause protection stand in the President's way" of removing SEC ALJs.[62] We further held that SEC ALJs were "inferior officers . . . because they ha[d] substantial authority within SEC enforcement actions."[63] And because those protections left the SEC's principal officers unable to "intervene in their inferior officers' [the ALJs] actions except in rare cases," the President, by extension, "lack[ed] the control necessary to ensure that the laws [were] faithfully executed."[64] We therefore held the removal restrictions unconstitutional.

The same analysis applies here. NLRB ALJs, too, are protected by "at least two layers of for-cause protection."[65] The NLRB may remove its ALJs only when the MSPB finds good cause—just like the SEC.[66] And

————————————————

*Comm'n*, 132 F.4th 745, 746 (5th Cir. 2024). Accordingly, we reaffirmed that the "statutory removal restrictions on SEC ALJs violate [] Article II." *Id.*

[60] *Id.* at 464 (citation omitted).

[61] *Id.*

[62] *Id.* at 465.

[63] *Id.* at 464 (citing *Lucia v. Sec. & Exch. Comm'n*, 585 U.S. 237, 248–49 (2018)).

[64] *Id.*

[65] *Id.* at 465.

[66] 5 U.S.C. § 7521(a) (applies to both SEC and NLRB).

24-50627
c/w Nos. 24-10855, 24-40533

MSPB Members are removable only for cause, regardless of whether they oversee SEC or NLRB ALJs.[67]

The NLRB has elsewhere acknowledged that "Board judges, like SEC judges, are inferior officers."[68] It now seeks to cabin that concession, arguing that "NLRB ALJs' powers are materially more restricted in scope" than those of SEC ALJs, citing their lack of sanction authority and the nonfinality of their decisions. But that understates the scope of NLRB ALJs' authority.

First, NLRB ALJs may "admonish or reprimand, after due notice, any person who engages in misconduct at a hearing," and may strike witness testimony for refusing to answer a question.[69] These are sanction powers which, though not identical, are hardly trivial and arguably more consequential than those held by SEC ALJs.

Second, NLRB ALJ decisions become final, by regulation, in not-uncommon circumstances—namely, "if no timely or proper exceptions are filed."[70] Indeed, SEC ALJ decisions are less final: the SEC may review them "on its own initiative," even absent a party's request.[71]

If SEC ALJs' removal protections are unconstitutional, the same must be true of NLRB ALJs—whose powers are, if anything, more robust.

---

[67] *Id.* § 1202(d). Any MSPB member "may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office." *Id.*

[68] *WestRock Servs., Inc.*, 366 NLRB No. 157, slip op. at 1 (Aug. 6, 2018) (holding that the reasoning of *Lucia* on SEC ALJs applies equally to NLRB ALJs).

[69] 29 C.F.R. § 102.177(b)–(c).

[70] *Id.* § 102.48(a); *see also* 29 U.S.C. § 160(c).

[71] 17 C.F.R. § 201.360(d)(1).

24-50627
c/w Nos. 24-10855, 24-40533

Because NLRB ALJs are inferior officers insulated by two layers of for-cause protection, the removal restrictions are unconstitutional.

b

The NLRB next contends that the Board Members' removal protections are constitutional under *Humphrey's Executor v. United States*.[72] We disagree.

*Humphrey's Executor* carved out an "'exception' to the general 'rule' that lets a president remove subordinates at will."[73] There, the Supreme Court upheld removal restrictions—"for inefficiency, neglect of duty, or malfeasance in office"—for the Federal Trade Commission's multi-member body of experts, reasoning that its commissioners exercised "quasi legislative and quasi judicial" functions and did not, at the time, wield "executive power in the constitutional sense."[74]

In the 90 years since, courts have been reluctant to extend *Humphrey's Executor* beyond its facts. The Supreme Court has recognized it as a narrow exception, limited to "multimember expert agencies that do not wield substantial executive power."[75]

------

[72] 295 U.S. 602 (1935).

[73] *Consumers' Rsch. v. Consumer Prod. Safety Comm'n*, 91 F.4th 342, 352 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 414 (2024) (citing *Seila Law*, 591 U.S. at 228).

[74] *Humphrey's Executor*, 295 U.S. 602, 623, 628 (1935).

[75] *Seila Law*, 591 U.S. at 218; *Collins v. Yellen*, 594 U.S. 220, 256 (2021).

24-50627
c/w Nos. 24-10855, 24-40533

Unlike the FTC commissioners in 1935,[76] NLRB Board Members today "wield substantial executive power."[77] They determine bargaining units, direct representation elections, adjudicate unfair-labor-practice charges, and seek enforcement of their orders in federal court.[78] They also appoint inferior officers, including the executive secretary, attorneys, regional directors, and ALJs.[79] And the NLRA empowers the Board to petition federal district courts for injunctive relief against alleged unfair labor practices.[80] In short, Board Members execute the NLRA through "administrative, policymaking, and prosecutorial authority."[81] That they may be removed only "for neglect of duty or malfeasance in office, but for no other cause" renders the removal provision constitutionally suspect under modern separation-of-powers doctrine.[82]

---

[76] SpaceX correctly identifies this important detail. The original FTC Act required the Attorney General of the United States to seek mandamus relief in federal court. Act of Sept. 26, 1914, ch. 311, § 9, 28 Stat. 717, 722 (codified as amended at 15 U.S.C. § 49). After *Humphrey's Executor*, Congress amended the statute to authorize the FTC's own attorneys to seek injunctive relief in a specified category of cases, thereby expanding the agency's power. Act of Mar. 21, 1938, ch. 49, §4, 52 Stat. 111, 115 (codified as amended at 15 U.S.C. § 53). Accordingly, any post-*Humphrey's Executor* comparison between the prosecutorial powers of the FTC and those of the NLRB would be inapt. *But see Illumina, Inc. v. FTC*, 88 F.4th 1036, 1047 (5th Cir. 2023) (holding that "the question of whether the FTC's authority has changed so fundamentally as to render *Humphrey's Executor* no longer binding is for the Supreme Court, not [this court], to answer.").

[77] *Seila Law*, 591 U.S. at 218.

[78] 29 U.S.C. §§ 159–160.

[79] *Id.* § 154(a).

[80] *Id.* § 160(e), (j).

[81] *SpaceX*, 741 F. Supp. 3d at 637. *See Overstreet v. El Paso Disposal*, 625 F.3d 844, 852 (5th Cir. 2010); *Starbucks Corp. v. McKinney*, 602 U.S. 339, 359 (2024) (JACKSON, J., concurring in judgment); *United States v. Tex.*, 599 U.S. 670, 678–79 (2023); *Seila Law*, 591 U.S. at 218–19.

[82] 29 U.S.C. § 153(a).

23

24-50627
c/w Nos. 24-10855, 24-40533

Recent Supreme Court precedent points the same way. In staying an injunction that barred President Trump from removing NLRB Board Members Gwynne Wilcox and Cathy Harris, the Court observed that "the Government is likely to show that both the NLRB and MSPB exercise considerable executive power."[83] While the Justices were careful to say that they "d[id] not ultimately decide" the issue, their stay order reinforces our conclusion that Board Members' insulation from presidential removal likely violates Article II.[84]

The NLRB insists its removal protections survive because its structure mirrors that of the Consumer Product Safety Commission (CPSC) in *Consumers' Research v. CPSC*.[85] There, we reaffirmed that *Humphrey's Executor* "still protects any 'traditional independent agency headed by a multimember board.'"[86] The CPSC, like the FTC in *Humphrey's Executor*, has five members, and no more than three from the same political party—reflecting Congress's intent that the agency remain "non-partisan" and "act with entire impartiality."[87] Although the CPSC "exercises substantial executive power (in the modern sense)," its structure mirrors that of the FTC: a multimember board whose staggered appointment schedule "means that each President *does* 'have an[] opportunity to shape [the Commission's] leadership and thereby influence its activities.'"[88] Additionally, the CPSC does not receive funds outside the appropriations process—so "the

_____

[83] *Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025).

[84] *Id.*

[85] 91 F.4th at 351–52.

[86] *Id.* at 352 (quoting *Seila Law*, 591 U.S. at 207).

[87] *Id.* at 353 (citing *Humphrey's Executor*, 295 U.S. at 624).

[88] *Id.* at 353–54 (quoting *Seila Law*, 591 U.S. at 225).

24

President *can* 'influence' the Commission's activities via the budgetary process."[89] Those characteristics led us to uphold the CPSC's removal protections.[90]

Our precedent therefore requires looking not only at whether officers "wield substantial executive power," but also at whether the agency shares the FTC's structural hallmarks and whether for-cause removal "'combine[s]' with 'other independence-promoting mechanisms' that 'work[] together' to 'excessively insulate' an agency from presidential control."[91] As we observed in *Consumers' Research*, "[t]he contours of the *Humphrey's Executor* exception depend upon the characteristics of the agency before the Court."[92] And there, the CPSC was the "mirror image" of the FTC.[93]

Here, the NLRB departs in critical respects. Both the Board Members and the General Counsel wield prosecutorial power. But while the General Counsel is politically accountable, the Board Members are not.[94] In *Exela Enterprise Solutions v. NLRB*, we held that *Humphrey's Executor* did

––––––––––––––––––––––––––––

[89] *Id.* at 355 (quoting *Seila Law*, 591 U.S. at 225).

[90] 15 U.S.C. § 2053; *Consumers' Rsch.*, 91 F.4th at 356.

[91] *Consumers' Rsch.*, 91 F.4th at 353, 345 (citation omitted). Contrary to NLRB's contention, neither this circuit nor the Supreme Court has endorsed the FTC, in its modern form, as falling within *Humphrey's Executor*'s approval of its removal protections. *See Illumina, Inc.*, 88 F.4th at 1047.

[92] *Id.* at 352–53 (citation omitted) (emphasis removed).

[93] *Id.* at 346.

[94] The NLRB's General Counsel has no removal protections. *Exela Enter. Sols., Inc. v. NLRB*, 32 F.4th 436, 441 (5th Cir. 2022) ("no provision of the NLRA protects the General Counsel of the NLRB from removal. Whereas Congress clearly and unequivocally provided removal protections to the Board Members, it did not grant those same protections to the General Counsel."); 29 U.S.C. §153(d); *NRLB v. United Food & Com. Workers Union*, 484 U.S. 112, 128–29 (1987).

24-50627
c/w Nos. 24-10855, 24-40533

not justify insulating the General Counsel's "quintessentially prosecutorial functions" from presidential control. If that exception does not extend to the politically accountable General Counsel, it cannot reach the even-less-accountable Board members.

Moreover, unlike the FTC and the CPSC, the NLRB has no statutory party-balancing requirement. The Supreme Court has cabined *Humphrey's Executor* as "permit[ting] Congress to give for-cause removal protections to a multimember body of experts" where that body is statutorily "balanced along partisan lines."[95] That is not true of the NLRB. A President may fill four of its five seats with members of his own party, and the Board's work is widely acknowledged as politically charged.[96] This absence of structural balancing undermines the "independence" rationale underlying *Humphrey's Executor*.

---

[95] *Seila Law*, 591 U.S. at 216.

[96] *See Valley Hosp. Med. Ctr., Inc. v. NLRB*, 100 F.4th 994, 1003 (9th Cir. 2024) (O'SCANNLAIN, J., concurring) ("Newly constituted Boards have made a practice of overruling precedent created by past administrations' Boards, with each Board instituting its own set of politically-motivated rules.") (quoting Zev J. Eigen & Sandro Garofalo, *Less Is More: A Case for Structural Reform of the National Labor Relations Board*, 98 MINN. L. REV. 1879, 1887 (2014)); James J. Brudney, *Isolated and Politicized: The NLRB's Uncertain Future*, 26 COMP. LAB. L. & POL'Y J. 221, 223 (2004) ("The Board's isolation and politicization have left it in an unfortunate position."); William N. Cooke & Frederick H. Gautschi, *Political Bias in NLRB Unfair Labor Practice Decisions*, 35 INDUS. & LAB. REL. REV. 539 (1982); U.S. Chamber of Commerce, *The Biden Administration's "Whole of Government" Approach to Promoting Labor Unions* 23–24, 27–31 (2023), https://perma.cc/AE36-3Z6N.

On the other hand, a President's ability to appoint four of five Board Members—at least by the end of a single term—can invert the political-accountability "requirement." The ability to install four Members from the President's own party suggests that the Board is, in practice, *more accountable* to the Executive. *Consumers' Rsch.*, 91 F.4th at 354 ("[T]he Commissioners' staggered appointment schedule means that each President does 'have an[ ] opportunity to shape [the Commission's] leadership and thereby influence its activities.'") (internal citation omitted).

Admittedly, the merits question for Board Members' removal protections is a closer call than for ALJs. But both the Supreme Court and this circuit have declined to extend *Humphrey's Executor* to agencies that are not a "mirror image" of the FTC. The NLRB's structure and powers take it outside that narrow exception.

We therefore conclude that the Employers are likely to succeed on the merits of their challenge to the Board Members' removal protections.

2

Having found a likelihood of success on the merits, we turn to irreparable harm. The NLRB says the Employers have shown none, insisting they must prove a distinct injury flowing from the constitutional violations. We disagree.

First, the NLRB argues that parties are not entitled to injunctive relief "merely because an act is unconstitutional," drawing a line between structural constitutional claims and those involving individual rights, such as the First Amendment or privacy. That line is illusory: "The structural principles secured by the separation of powers protect the individual as well."[97] Nothing in the NLRB's argument—or in its cited authorities—suggests treating structural claims differently.

Second, the NLRB leans heavily on the Supreme Court's decision in *Collins v. Yellen* to argue that the Employers' harms are not irreparable. That misreads *Collins*—and the decisions surrounding it.

---

[97] *Bond v. United States*, 564 U.S. 211, 222 (2011) ("In the precedents of this Court, the claims of individuals—not of Government departments—have been the principal source of judicial decisions concerning separation of powers and checks and balances.").

24-50627
c/w Nos. 24-10855, 24-40533

In *Seila Law*, the Court struck down the CFPB's single-director removal protection. The CFPB had ordered Seila Law to "produce information and documents related to its business practices,"[98] but the firm refused, arguing that the director's insulation from presidential removal was unconstitutional. The Court agreed, holding that subjection to unlawful executive power is a "here and now" injury sufficient for Article III standing.[99]

A year later, in *Collins*, the Court likewise held that the FHFA Director was unconstitutionally insulated.[100] It reiterated that "whenever a separation-of-powers violation occurs, any aggrieved party with standing may file a constitutional challenge."[101] But because the plaintiffs sought retrospective relief, the Court required proof that the unconstitutional removal restriction actually affected the agency's decision and, in turn, the plaintiffs' rights.[102] In short: backward-looking relief requires a causal link between the violation and the outcome.

Soon after, our en banc court in *Cochran v. U.S. Securities and Exchange Commission* held that a plaintiff could seek to enjoin ongoing SEC proceedings before ALJs unconstitutionally insulated from removal. The plaintiff was not attacking past agency action but seeking "an administrative

---

[98] *Seila Law*, 591 U.S. at 208.

[99] *Id.* at 211. We note, however, that the Court did not address irreparable harm in the context of an injunction.

[100] 594 U.S. at 251–52.

[101] *Id.* at 245. Notably, *Collins* concerned "retrospective relief" and thus required plaintiffs to show the unlawful removal restriction "inflict[ed] compensable harm." *Id.* at 259 (explicitly recognizing that plaintiffs no longer had a live claim for prospective relief).

[102] *Id.* at 259.

24-50627
c/w Nos. 24-10855, 24-40533

adjudication untainted by separation-of-powers violations."[103] Being subjected to such a proceeding, we held, is itself a concrete injury warranting prospective relief.

We took a different approach in *Community Financial*, where plaintiffs sought to block enforcement of a final rule issued under an unconstitutionally insulated director.[104] There, following *Collins*, we required proof of three things: "(1) a substantiated desire by the President to remove the unconstitutionally insulated actor, (2) a perceived inability to remove the actor due to the infirm provision, and (3) a nexus between the desire to remove and the challenged actions taken by the insulated actor."[105]

Finally, in *Axon*, the Supreme Court held that parties could bypass an agency's review scheme to challenge its very power to proceed. The plaintiffs did not contest any specific "actions taken in the agency proceedings,"[106] but instead argued they were entitled not to be subjected to proceedings conducted by unconstitutionally insulated ALJs.[107] That is, they challenged the agency's "power to proceed at all."[108] The Court agreed, holding that "being subjected" to "unconstitutional agency authority" is "a here-and-

---

[103] *Cochran v. Sec. & Exch. Comm'n*, 20 F.4th 194, 210 n.16, 213 (5th Cir. 2021), *aff'd and remanded sub nom. Axon Enter.*, 598 U.S. 175 (2023). We note that this discussion of harm occurred in the context of standing analysis.

[104] *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. Consumer Fin. Prot. Bureau*, 51 F.4th 616, 623 (5th Cir. 2022), *rev'd and remanded on other grounds*, 601 U.S. 416 (2024), *and reinstated in part by* 104 F.4th 930 (5th Cir. 2024).

[105] *Community Financial*, 51 F.4th at 632.

[106] *Axon Enter.*, 598 U.S. at 192.

[107] *Id.* at 194.

[108] *Id.* at 192.

24-50627
c/w Nos. 24-10855, 24-40533

now injury"—one "impossible to remedy once the proceeding is over."[109] A "proceeding that has already happened cannot be undone."[110]

That is this case. The Employers' injury is *Axon*'s injury: the "here-and-now injury" of "being subjected to unconstitutional agency authority."[111] And that harm is irreparable.

The NLRB insists *Collins* and *Community Financial* foreclose such a finding. They do not. *Collins* governs retrospective relief from final agency action. The Employers here seek no such thing. They challenge not past agency conduct but the validity of the ongoing proceeding itself. *Community Financial* likewise involved retrospective relief from a final rule and required a causal link between the unconstitutional removal provision and the challenged agency action.[112] Here, the proceeding *is* the injury. The harm is not downstream from the process—it *is* the process.

The NLRB tries to cabin *Axon* to jurisdiction. But its reasoning fits irreparable harm hand-in-glove: once an unconstitutional proceeding begins, the damage is done. That is the essence of irreparability. No further showing—such as how the outcome might differ under a valid structure—is required.[113] Waiting until the end would be no remedy at all.

---

[109] *Id.* at 191 (citing *Selia Law*, 591 U.S. at 212).

[110] *Id.*

[111] *Id.* (internal quotation marks and citation omitted).

[112] *Community Financial*, 51 F.4th at 632.

[113] *See Collins*, 594 U.S. at 263–64 (THOMAS, J., concurring).

30

24-50627
c/w Nos. 24-10855, 24-40533

Binding precedent, first principles, and common sense align: forcing the Employers to appear before an unconstitutionally structured agency inflicts irreparable harm.[114]

3

One final element remains: the balance of the equities and the public interest. These two factors "merge when the Government is the opposing party."[115]

The Government suffers no cognizable injury when a court halts unlawful agency action.[116] Nor does the public interest suffer when an unlawful agency structure is prevented from subjecting "countless individuals and companies" to unconstitutional proceedings.[117] To the contrary, "the public is served when the law is followed."[118] And the public

---

[114] Respectfully, the dissent's "causal harm" requirement—that litigants must show some *other* injury beyond the unconstitutional proceeding itself—cannot be squared with *Axon*. Grafting *Collins*'s causal-showing rule (meant for attacking past, final agency action) onto challenges to an ongoing invalid process—one "impossible to remedy once the proceeding is over," 598 U.S. at 191—would nullify *Axon*. When the injury is the proceeding itself, not its result, injunctive relief is the only remedy that matters. *Id.* The "here-and-now injury" of being hauled before an unlawful tribunal is inflicted the instant the proceeding begins—and the Constitution does not force litigants to endure that injury just to keep alive the right to contest the tribunal's legitimacy after the damage is done.

[115] *Nken*, 556 U.S. at 435.

[116] *BST Holdings, L.L.C. v. Occupational Safety & Health Admin., U.S. Dep't of Labor*, 17 F.4th 604, 618 (5th Cir. 2021) ("Any interest OSHA may claim in enforcing an unlawful (and likely unconstitutional) [standard] is illegitimate.").

[117] *Id.*

[118] *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013).

is disserved when "accountability" evaporates because "a person or entity other than Congress exercises legislative power."[119]

The NLRB is correct that "[w]hen a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws."[120] And when "the State is the appealing party, its interest and harm merges with that of the public."[121] But standing alone, these considerations are "not enough" to "outweigh the other factors."[122]

Here, the equities and the public interest align in the same direction: both favor preliminary relief.

### IV

The Constitution does not countenance unlawful power. And when the Constitution draws boundaries, neither agency expedience nor institutional inertia can erase them. The district courts recognized as much and acted to prevent an injury that, once inflicted, cannot be undone. Because the Employers have shown a likelihood of success, irreparable harm, and equities that tip sharply in their favor, we AFFIRM.

---

[119] *Jarkesy*, 34 F.4th at 460 (citing *Gundy v. United States*, 588 U.S. 128, 155 (2019) (GORSUCH, J., dissenting)).

[120] *Planned Parenthood of Greater Tex. Surgical Health Sers. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013).

[121] *Id.*

[122] *Id.*

24-50627
c/w Nos. 24-10855, 24-40533

JACQUES L. WIENER, JR., *Circuit Judge*, concurring in part and dissenting in part:

While I concur in most of the majority opinion's holdings, I write separately to dissent from its holding that the Employers are entitled to a preliminary injunction regarding the removability of NLRB board members. Because the Employers have failed to prove that they would suffer irreparable harm in the absence of a preliminary injunction for that specific issue, I would instead reverse the district court's decision granting injunctive relief.

## I.

The majority opinion holds that the Employers have satisfied the irreparable harm prong because they would be subjected to a "here-and-now" injury if they participated in the NLRB agency proceedings.[1] To me, this view misinterprets Supreme Court and Fifth Circuit precedent because it lowers the Employers' burden because it does not require them to allege additional causal harm that they would face if subjected to proceedings before the NLRB board members. As a result, the majority's holding creates a divide between our circuit and the Tenth, Sixth, and Second Circuits.

### a.

The only case arising out of Supreme Court and Fifth Circuit precedent that addresses injunctive relief on the merits in a removability context is *Collins v. Yellen*, 594 U.S. 220 (2021). In *Collins*, the Supreme Court explained why challenges to unconstitutional removal provisions—as opposed to unlawful appointment provisions—require that the provisions inflict compensable harm. *Id.* at 259. The need for the additional element

_____

[1] Under the majority's analysis for this prong, I do concur with their discussion of the NLRB's attempt to distinguish between structural constitutional claims and those involving individual rights. *Ante* at 30.

arises because, in instances concerning an unconstitutional removal provision, "the unlawfulness of the removal provision does not strip the [officer] of the power to undertake the other responsibilities of his office[.]" *Id.* at 258 n.23. In other words, a duly appointed officer is not "illegitimate" and "the mere existence of an unconstitutional removal provision . . . generally does not automatically taint Government action by an official unlawfully insulated." *Id.* at 267 (THOMAS, J., concurring). Accordingly, the Court explained that, even in instances when parties successfully prove that a removal provision is unconstitutional, they must also show how that caused them additional harm to be entitled to relief. *See id.* at 258 n.23 (majority opinion); *see also id.* at 270–71 (THOMAS, J., concurring) ("I seriously doubt that the [plaintiffs] can demonstrate that any relevant action by an [officer]"—who the Court held was protected by an unconstitutional removal provision—"violated the Constitution. And, absent an unlawful act, the [plaintiffs] are not entitled to a remedy."); *Leachco, Inc. v. Consumer Safety Prod. Comm'n*, 103 F.4th 748, 757 (10th Cir. 2024), cert denied, 145 S. Ct. 1047 (2025) ("[A]s explained by the majority in *Collins*, plaintiffs who succeed in a constitutional challenge to a removal provision are not automatically entitled to relief—they must show that the removal provision caused some harm to them beyond the mere existence of the unconstitutional provision."). For unlawful appointments, however, the opposite is true, because unlawfully appointed officers are vested with authority that was never constitutionally theirs to exercise. Thus, their actions would be void *ab initio*. *Collins*, 594 U.S. at 257 (majority opinion). While *Collins* concerned a party's entitlement to retrospective relief regarding challenges to unconstitutional removal provisions, binding precedent mandates that we find the "causal harm" element is still required for parties seeking prospective relief. *See discussion infra* at 4–8.

Here, the Employers never claim that the NLRB board members were unlawfully appointed. Rather, they claim that such officers are unconstitutionally insulated from the President's control for purposes of removal. *Collins* explains that, because these officers were constitutionally appointed, not all of their actions are "tainted" and that they have "the power to undertake other responsibilities of [their] office." 594 U.S. at 258 n.23. Since such officers are not wholly "illegitimate," it follows that to qualify for injunctive relief, the Employers must show some harm that the alleged unconstitutional clauses caused to the underlying agency proceedings.

The Tenth, Sixth, and Second Circuits have used this same reasoning and have required aggrieved parties to show that the unconstitutional removal provision interfered with the underlying proceedings. *See Leachco, Inc.*, 103 F.4th at 753 ("[U]nder current Supreme Court precedent, succeeding in a constitutional challenge to an agency official's removal protections is not sufficient, by itself, to warrant relief from proceedings before that agency official. Instead, the plaintiff must show that the unconstitutional removal protections made a difference in its case[.]"); *YAPP USA Auto. Sys. Inc. v. NLRB*, No. 24-1754, 2024 WL 4489598 at *3 (6th Cir. 2024) (holding that plaintiff's "bare claim that the NLRB proceeding would be 'illegitimate' is not enough" to satisfy the irreparable harm prong because the plaintiff "has not explained how the removal protections for the NLRB Board Members or NLRB ALJs would '*specifically* impact' the upcoming proceeding.") (emphasis in original) (internal citations omitted); *Consumer Fin. Prot. Bureau v. L. Offs. of Crystal Moroney, P.C.*, 63 F.4th 174, 180 (2d Cir. 2023) ("*CFPB*") ("[A] party seeking to void an agency action must first show but-for causation linking an unconstitutional removal protection to the complained-of agency action"

35

because doing so "properly matches the constitutional injury to the requested remedy.").

Relying on *Collins*, this court has outlined three examples of how the Employers could establish the requisite harm:

> (1) A substantiated desire by the President to remove the unconstitutionally insulated actor, (2) a perceived inability to remove the actor due to the infirm provision, and (3) a nexus between the desire to remove and the challenged actions taken by the insulated actor.

*Cmty. Fin. Servs. Ass'n v. Consumer Fin. Protect. Bureau*, 51 F.4th 616, 632 (5th Cir. 2022), *rev'd and remanded on other grounds*, 601 U.S. 416 (2024), *and reinstated in part by* 103 F.4th 930 (5th Cir. 2024). The Employers have not established the causal harm element through these or any other examples.

b.

Nevertheless, the majority opinion attempts to collage together various decisions by the Supreme Court and this circuit to hold that the Employers need not allege a causal element to prove the irreparable-harm prong. *Ante* at 28–32. It ultimately concludes that the Supreme Court's holding in *Axon Enterprise Inc. v. Federal Trade Commission*, 598 U.S. 175 (2023) requires us to find that *Collins* only applies to cases in which parties seek retrospective relief. *Ante* at 30-32.[2] Doing that, however, results in

---

[2] The majority opinion states that, the "causal harm requirement. . . cannot be squared with *Axon*" such that my view "graft[s] *Collins*'s causal-showing rule" to "nullify *Axon*." *Ante* at 31 n.114. For the reasons that I have stated herein, I respectfully disagree for two major reasons. First, *Axon* never discussed injunctive relief on the merits, so it is not possible for *Collins* to "nullify" *Axon* under the factual circumstances of this case. Second, binding precedent demonstrates that parties are not automatically subject to an illegitimate proceeding when they challenge removal provisions of agency officers leading

applying *Axon* and other case precedent out of context because it takes the Supreme Court's dicta and holdings on jurisdictional questions to resolve issues in a completely separate area of law. Instead, this same precedent requires us to reverse the district court's decision because, at this stage of the analysis, we are tasked with determining whether the Employers are entitled to injunctive relief.[3]

Specifically, the majority holds that the Supreme Court's discussion in *Axon* overrules portions of this court's dicta in *Community Financial Services Association v. Consumer Financial Protection Bureau* ("*CFSA*"). They suggest that we should interpret *Collins* to be inapplicable in those instances when a party seeks prospective relief. 51 F.4th at 616. I respectfully dissent and in doing so, aim to provide necessary context to the cases that the majority opinion cites to but omits from its analysis.

In *CFSA*, this court emphasized that parties are required to show causal harm regardless of whether they are seeking prospective or retrospective relief. *Id.* at 631. While *CFSA* did not discuss injunctive relief on the merits, it did consider questions of unconstitutional removal provisions at the summary judgment stage. *Id.* at 626. There, we explained that "*Collins* did not rest on a distinction between prospective and retrospective relief" and outlined the three ways that parties can establish causal harm regarding unconstitutional removal provisions. *Id.* Other circuits have also reached this conclusion. *See, e.g.*, *CFPB,* 63 F.4th at 180–181 ("[T]o void an agency action due to an unconstitutional removal protection,

---

that proceeding. That is only true when parties make an Appointments Clause challenge, which the Employers did not. *See Collins*, 594 U.S. at 258–59; *id.* at 267 (Thomas, J., concurring).

[3] We have already concluded that the district court had jurisdiction to hear the case. *See Ante* 10–13.

a party must show that the agency action would not have been taken *but for* the President's inability to remove the agency head.") (emphasis in original). In *Cochran v. U.S. Securities and Exchange Commission*, our en banc court held that a party has *standing* to challenge the constitutionality of removal provisions in agency proceedings. 20 F.4th 194 (5th Cir. 2021). Notably, *Cochran* strictly considered questions of *jurisdiction* and applied the *Thunder Basin* factors to reach its conclusion—much like the majority opinion presently does in its section on jurisdiction. *See Ante* at 10.

In *Axon*, decided after *CFSA*, the Supreme Court discussed "here-and-now" injuries, and focused on whether the district court had *jurisdiction* to issue a preliminary injunction against federal agencies. 598 U.S. at 175. As a refresher, such injuries occur when parties are subjected to an ongoing "illegitimate proceeding, led by an illegitimate decisionmaker," and that constitutes an injury because "it is impossible to remedy once the proceeding is over." *Id.* at 191. The Court then held that district courts have the *jurisdiction* to hear cases and issue relief when parties who seek prospective relief suffer "here-and-now" injuries. *See id.* at 182–83, 196. Importantly, at the outset of the opinion, the Court stated "[o]ur task today is *not* to resolve th[e] challenges [to the agencies' structure]; rather, it is to decide *where* they may be heard." *Id.* at 180 (emphasis added).

And finally, when *CFSA* returned to us on remand, we reaffirmed the part of its earlier-issued opinion that explained there is no distinction in cases seeking prospective or retrospective relief. *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 104 F.4th 930 (5th Cir. 2024).

Presently, the majority opinion mistakenly conflates the *jurisdictional ability* of district courts to hear and issue injunctive relief in "here-and-now" injury cases with the burden placed on the party seeking *injunctive relief*. It holds that, after *Axon*, a party may challenge an unconstitutional removal

38

provision in cases seeking only prospective relief, and to establish irreparable harm, that party need not demonstrate any causal harm—and further, that *Cochran* supports this reading. *See Ante* at 29–31. This is problematic because, as I have stressed, neither the *Axon* Court nor the *Cochran* court addressed the issue of irreparable harm—or any other issue regarding injunctive relief on the merits. Here, the majority opinion even "notes" that it is taking many cases out of their intended context. *See Ante* at 30 at n.110 (citing *Cochran*, then stating: "We note that this discussion of harm occurred in the context of a standing analysis"); *id.* at 29 n.104 (noting that the Supreme Court's discussion in *Seila Law LLC* "did not address the irreparability of the harm in the context of an injunction").[4] Using *Axon* to cabin *CFSA* and distinguish between prospective and retrospective relief is worrisome because it stretches *Axon* past the Supreme Court's intent and also creates a circuit split.

c.

In a factually similar case, the Tenth Circuit explained why it declined to extend *Axon* when addressing the merits of a preliminary injunction claim for prospective relief. Critically, it stated that "*Axon* does not help [the plaintiff] to establish irreparable harm because *Axon* did not address the issue of irreparable harm, or any other issue regarding entitlement to injunctive relief." *Leachco, Inc.*, 103 F.4th at 758.

In *Leachco, Inc. v. Consumer Product Safety Commission*, Leachco sought a preliminary injunction against the Consumer Protection Safety Commission and claimed that its commissioners and ALJs were protected by unconstitutional removal provisions. *Id.* at 748. That court affirmed the district court's denial of injunctive relief because Leachco did not establish

---

[4] The relevance of *Seila Law LLC* is discussed in the next section. *See infra* part c.

the irreparable harm prong. *Id.* at 753–59. It held that claiming that an agency's officers "possess unconstitutional removal protections," without any connection to the proceeding, does not establish irreparable harm. *Id.* at 753. Even though Leachco sought prospective relief, the Tenth Circuit expressly declined to apply *Axon*, reasoning that *Axon* strictly considered jurisdictional questions and did not discuss injunctive relief. *Id.* at 758–59 ("We do not believe [the *Axon* Court] statements help Leachco establish irreparable harm here because they were made in the context of the Court's jurisdictional *Thunder Basin* analysis, and not within the context of determining the plaintiffs' entitlement to preliminary injunctive relief."). It also discussed why it understands Supreme Court precedent to support a narrow reading of *Axon*'s "here-and-now injury language." *See id.*

The Tenth Circuit noted that this commentary originated from the Supreme Court's discussion in *Seila Law LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197 (2020). There, the Court held that federal courts have the jurisdiction to reach the merits of a claim involving whether a removal provision violates the separation of powers. Once again, however, the discussion in *Seila Law* on this issue concerned *standing* and did not reach the question of whether the aggrieved party was entitled to injunctive relief. The Tenth Circuit further explained that, in *Collins*, the Supreme Court stressed that "[w]hat we said about standing in *Seila Law* should not be misunderstood as a holding on a party's entitlement to relief based on an unconstitutional removal restriction." *Leachco, Inc.*, 103 F.4th at 759 (quoting *Collins*, 594 U.S. at 259 n.24 (citing *Seila Law*, 591 U.S. at 210–12)). By declining to apply *Axon* to *Leachco, Inc.*, the Tenth Circuit reiterated that it was "follow[ing] the Supreme Court's words of caution" that plaintiffs may only use "here-and-now-injur[ies]" to establish *standing*—not to establish *relief*. *Id.* Doing otherwise would "convert" *Axon* "into a broad ruling that creates an entitlement on the merits to a preliminary injunction in

every case where such constitutional challenges are raised." *Id.* That court then denied Leachco injunctive relief because it failed to allege causal harm between the removal protections and agency proceedings. *Id.* And, under similar facts, other circuits have also reached the same conclusion. *YAPP USA,* 2024 WL 4489598, at *3 (The Sixth Circuit declining to find that *Axon*'s holding helps parties satisfy the irreparable harm prong when seeking injunctive relief because "[t]he Court did not address the merits of those claims [for injunctive relief], but rather assessed whether federal courts have *jurisdiction* to hear the claims on the merits" (emphasis in original)); *CFPB,* 63 F.4th at 181 (The Second Circuit holding that Supreme Court precedent explains that regardless of whether a party seeks prospective or retrospective relief, it must establish causal harm between the purported unconstitutional removal provision and the underlying proceeding).

The majority opinion's holding today impermissibly extends *Axon* in a way that the Tenth and Sixth Circuits have expressly rejected, and that the Second Circuit implicitly rejected.[5] And it does so without acknowledging any of those cases. I conclude that, as a result, we are left with a circuit split that flouts the Supreme Court's clear directive that the discussions in *Axon* and *Seila Law* on standing do not extend to a party's entitlement to relief.

## II.

In sum, I respectfully disagree with the majority opinion's conclusion that the Employers have satisfied the irreparable-harm prong by simply alleging they suffer a "here-and-now" injury. The Supreme Court has plainly indicated that parties are not automatically subject to the authority of

---

[5] Because it was decided later, the Second Circuit did not cite *Axon* when it held that parties must allege causal harm when seeking both prospective and retrospective relief for officers who are unconstitutionally insulated from removal. *CFPB*, 63 F.4th at 181.

"illegitimate" officers who might be protected by unconstitutional removal provisions, as that only occurs when such officers are unconstitutionally *appointed*. It follows logically that we must require the Employers to allege some type of causation between the unconstitutional removal provision and their injuries to be entitled to injunctive relief, as other circuits have expressly stated. As I would reverse the district court's decision, I respectfully dissent.